UNITED STATES DISTRICT COURT **FILED**
DISTRICT OF CONNECTICUT

2010 APR 16  A 10: 46

|                    |           |   |                              |
|--------------------|-----------|---|------------------------------|
| Mario Gutierrez    |           | : | U.S. DISTRICT COURT          |
|                    | Plaintiff | : | HARTFORD, CT.                |
|                    |           | : |                              |
| v.                 |           | : | **310CV00584 RNC**           |
|                    |           | : | JURY TRIAL DEMANDED          |
| Tiger Group, Inc.  |           | : |                              |
|                    | Defendant | : | 3:10CV 584 RNC               |
|                    |           | : |                              |
|                    |           | : |                              |
|                    |           | : |                              |
|                    |           | : | April 12, 2010               |

## COMPLAINT

### INTRODUCTION

1.  This is an action for (i) money damages; (ii) liquidated damages; (iii) costs; (iv) attorneys' fees; (v) injunctive relief; and (vi) other relief as a result of Defendant's violation of federal and state laws including but not limited to the Defendant's failure to pay compensation due Plaintiff, in violation of the Fair Labor Standards Act ("**FLSA**"), *29 U.S.C. §§ 201 et seq.* This is further an action for (i) violation of the applicable wage and hour laws and regulations set forth in the Connecticut Minimum Wage Act ("CMWA"), codified at Conn. Gen. Stat. § 31-58 *et seq.*; (ii) breach of contract; and (iii) unjust enrichment.

### PARTIES

2.  Plaintiff, Mario Gutierrez, is an individual currently residing in West Hartford, Connecticut.  During portions of the three (3) years preceding the filing of this Complaint, Plaintiff worked as a home inspector and translator for Defendant, Tiger Group, Inc. ("**Defendant**").

3. During his employment with Defendant, Plaintiff consistently and regularly worked in excess of twenty (20) hours per week (conducting well in excess of one hundred (100) home inspections during the term of his employment and providing translation services), for which he received no compensation.

4. Defendant is a stock corporation organized under the laws of the State of Connecticut and having its corporate offices located at 1353 Boston Post Road, Madison, CT 06443.

5. At all times relevant to this action, Defendant was Plaintiff's employer within the meaning of the FLSA and the CMWA.

6. Defendant has been, and continues to be, an employer engaged in interstate commerce.

7. Defendant has failed to pay Plaintiff for any work performed.

## JURISDICTION AND VENUE

8. The United States District Court for the District of Connecticut has federal subject matter jurisdiction over this case under the provisions of 28 U.S.C. § 1331 because it asserts claims arising under Federal law. Supplemental jurisdiction over the State law claims set forth herein is predicated on 28 U.S.C. § 1367 as such claims arise out of the same case and controversy. Venue is proper in this District because the majority of the actions relevant to this Complaint occurred in this District.

## FACTUAL BACKGROUND

9. Defendant provides home inspection services to home buyers throughout Connecticut, New York and Massachusetts.

10. On or about October, 2007, Defendant and Plaintiff entered into a contract titled

"Independent Contractor Agreement" (the "**Independent Contractor Agreement**") wherein

Defendant engaged Plaintiff as a home inspector.

11. A true and correct copy of the Independent Contractor Agreement is attached

hereto as Exhibit A.

12. The Independent Contractor Agreement provides, among other things, as follows:

a) "[Defendant] hereby engages [Plaintiff] as an independent contractor to perform home inspections services for and on behalf of [Defendant.]"

b) "As compensation for each home inspection performed by [Plaintiff], [Plaintiff] will receive an amount equal to thirty-five percent (35%) of the inspection fee billed by [Defendant] until [Plaintiff] is fully licensed and forty percent (40%) of the inspection fee billed by [Defendant] when [Plaintiff] is fully licensed."

c) "[Defendant] will provide to [Plaintiff], at [Defendant's] costs and expense … workers' compensation insurance coverage under [Defendant's] master insurance plan."

d) "…[Defendant] will provide, at its cost and expense, supervision and in-house training to [Plaintiff]."

e) "[Defendant] shall bear the cost and expense of providing field and in-house training to [Plaintiff]. [Defendant] will provide all necessary training/supervision required in order to obtain the Connecticut State Home Inspector License."

13.     During the course of Plaintiff's employment by Defendant, Plaintiff obtained a Home

Inspection Intern Permit from the Department of Consumer Protection of the State of

Connecticut.

14.     In connection with Defendant's employment of Plaintiff as a "home inspector",

Defendant would typically e-mail or fax a request to him from its offices on the day

prior to the date of a scheduled inspection that it wanted Plaintiff to perform or co-

perform.

15.    Plaintiff would then travel to the location specified by Defendant and perform or perform in tandem, with another employee of Defendant, a home inspection for a client and produce an inspection report.  Plaintiff received no reimbursement for his work-related travel from Defendant.

16.    This occurred well in excess of one hundred occasions.

17.    On several occasions, Plaintiff was required to attend training classes in Defendant's offices and at the home of Defendant's principal.

18.    On several occasions, Defendant requested that Plaintiff travel to certain locations to provide translation services for Spanish-speaking clients.

19.    Defendant has failed to pay Plaintiff any amounts it promised to pay under the Independent Contractor Agreement, as required under federal and state law.

20.    To induce Plaintiff to continue working without compensation, Defendant continually assured Plaintiff that it would comply with all of its contractual obligations if Plaintiff continued to perform work on Defendant's behalf.

21.    Plaintiff was damaged by Defendant as a result of the aforementioned unlawful practices.

COUNT ONE:    VIOLATION OF FLSA, 29 U.S.C. §§ 201 ET. SEQ

22.    Plaintiff incorporates by reference all other paragraphs as if set forth herein at length.

23.    Defendant, during potions of the past three (3) years prior to the filing of this Complaint, has failed to pay the Plaintiff for any hours worked.

24.    Defendant has been the employer of Plaintiff within the meaning of 29 U.S.C. §§ 203 as it permitted or suffered Plaintiff to work.

25.     During the time period of three (3) years before the filing of this Complaint until the
present, Defendant erroneously classified Plaintiff as an independent contractor and
failed to compensate him for any hours worked.

26.     As a result of Defendant's unlawful acts, Plaintiff has been deprived of earned wages
in amounts to be determined at trial.  Plaintiff is entitled to recover all compensatory
damages for unpaid overtime, liquidated damages, prejudgment interest, attorneys'
fees, costs, and all other remedies available at law or in equity.

COUNT TWO:      FAILURE TO PAY WAGES IN VIOLATION OF THE CONNECTICUT
                MINIMUM WAGE ACT

27.     Plaintiff incorporates by reference all other paragraphs as if set forth herein at length.

28.     Defendant, during portions of the two (2) years preceding the filing of this Complaint
until the present, has subjected Plaintiff to the aforementioned practices in order to
deprive Plaintiff of wages, including failure to pay him his full and legally required
wages as provided for under the CMWA.

29.     For instance, during the time period of two (2) years before the filing of the
Complaint until the present, Defendant erroneously classified Plaintiff as an
independent contractor and failed to pay Plaintiff for any hours worked.

30.     Defendant's conduct in this regard was willful.

31.     As a result of Defendant's willful violation of the CMWA, Plaintiff is entitled to his
full and legally required wages.

32.     Plaintiff is further entitled to liquidated damages, interest, attorneys' fees and court
costs.

COUNT THREE:     BREACH OF CONTRACT

33.    Plaintiff incorporates by reference all other paragraphs as if set forth herein at length.

34.    Plaintiff and Defendant are parties to the Independent Contractor Agreement.  See
       Exhibit A.

35.    Defendant breached the Independent Contractor Agreement by failing to pay Plaintiff
       for amounts due thereunder.

36.    Defendant's breach was willful.

37.    As a result of Defendant's breach, Plaintiff has been deprived of monies owing to him
       in amounts to be determined at trial.

COUNT FOUR:      UNJUST ENRICHMENT

38.    Plaintiff incorporates by reference all other paragraphs as if set forth herein at length.

39.    As a result of Defendant's failure to pay Plaintiff wages for work performed or for
       amounts due under the Independent Contractor Agreement, Defendant obtained a
       benefit from Plaintiff.

40.    Defendant knew and recognized such benefit.

41.    As a result, Defendant has been unjustly enriched in an amount to be determined at
       trial.

DEMAND FOR RELIEF

WHEREFORE, the Plaintiff claims as follows:

1.  Unpaid Wages under the Fair Labor Standards Act and Conn. Gen. Stat. §§ 31-58 *et seq.*;

2.  Liquidated Damages under the Fair Labor Standards Act and Conn. Gen. Stat. §§ 31-58 *et seq.*;

3.  All amounts due and owing under the Independent Contractor Agreement;

4.  Interest and Costs incurred in the prosecution of this action;

5.  Attorneys' Fees payable pursuant to the Fair Labor Standards Act and Conn. Gen. Stat. §§ 31-58 *et seq.*;

6.  Injunctive relief under all counts set forth herein ordering Defendant to cease and desist from maintaining the illegal practices set forth above;

7.  An award of the costs of action incurred herein, including expert fees;

8.  Pre-judgment and post-judgment interest, as provided by law; and

9.  Such other and further legal and equitable relief as this Court deems necessary, just and proper.

JURY DEMAND

Plaintiff hereby demands a trial by Jury.

Plaintiff,
Mario Gutierrez

By:_____ /s/ _____

Richard A. Rochlin (ct 22167)
SIGMAN & ROCHLIN, LLC
100 Pearl Street
14th Floor
Hartford, CT 06103
Voice: 860.828.2138
Facsimile: 860.218.9659
rrochlin@sigmanandrochlin.com

Exhibit A

## INDEPENDENT CONTRACTOR AGREEMENT

This Agreement ("Agreement") is made as of the $\underline{1^{st}}$ day of $\underline{October}$ 2007, between **TIGER GROUP, INC.**, a Connecticut corporation ("Tiger Group") and
_____ of _____ (the
"Home Inspector").

### 1. **Engagement and Compensation**

(a) Tiger Group hereby engages the Home Inspector as an independent contractor to perform home inspection services for and on behalf of Tiger Group. The Home Inspector expressly acknowledges that he is an independent contractor.

(b) The parties acknowledge and agree that the Home Inspector is not Tiger Group. Tiger Group will assign inspections to the Home Inspector based upon the Home Inspector's availability as determined by the Home Inspector, and the Home Inspector will perform all inspections so assigned.

(c) As compensation for each home inspection performed by the Home Inspector, the Home Inspector will receive an amount equal to thirty-five percent (35%) of the inspection fee billed by Tiger Group until the Home Inspector is fully licensed and forty percent (40%) of the inspection fee billed by Tiger Group when the Home Inspector is fully licensed. The Home Inspector will receive thirty-five percent (35%) of all net testing fees billed by Tiger Group until the Home Inspector is fully licensed and up to forty percent (40%) of all net testing fees billed by Tiger Group when the Home Inspector is fully licensed and will increase by one percent for each of his/her accomplished qualifications per attached schedule. Upon submittal, the Inspector's bills will be paid as of the 10th, 20th and end of the month.

(d) As an independent contractor, the Home Inspector will be responsible for the payment of all withholding taxes, Social Security taxes and all other applicable Federal, state and/or local taxes. The Home Inspector acknowledges and agrees that he will be paid upon submission of completed inspection reports and that he will be furnished with a Form 1099 "Statement for Recipient of Miscellaneous Income" as non-employee compensation in time for timely filing of Federal and state tax returns.

2. **Training and Licensing**: In connection with Tiger Group's engagement of the Home Inspector, Tiger Group will provide, at its cost and expense, supervision and field and in-house training to the Home Inspector. The Home Inspector shall apply for a home inspector intern permit and a home inspector license as provided by the Connecticut General Statutes. Tiger Group shall bear the cost and expense of providing field and in-house training to the Home Inspector. Tiger Group will provide all necessary

training/supervision required in order to obtain the Connecticut State
Home Inspector License.

3.  **Termination and Reimbursement of Training Costs**

    (a)  This Agreement may be terminated by Tiger Group, Inc. with or
         without cause for any reason or no reason whatsoever. Reasonable
         prior notice to the Home Inspector shall be required in the event of
         termination for cause and without any liability to Tiger Group, Inc.
         The Home Inspector shall not be entitled to any compensation after
         any such termination; provided, however, that the Home Inspector
         shall be entitled to the payment of any compensation otherwise due
         the Home Inspector as provided for in paragraph 1 of the
         Agreement as determined through the date of termination.

    (b)  In the event that the Home Inspector terminates this Agreement
         within five (5) years after he has completed his training with Tiger
         Group and applied for and obtained a Connecticut Home Inspector
         License, and continues to perform home inspection services during
         the first year after such termination, the Home Inspector agrees to
         pay Tiger Group the amount of Fifteen Thousand and No Dollars
         ($15,000) to reimburse Tiger Group for the cost of training the
         Home Inspector.

    (c)  In the event that Tiger Group terminates this Agreement within
         five (5) years after the Home Inspector has completed his training
         with Tiger Group and applied for and obtained a Connecticut
         Home Inspector License, and the Home Inspector continues to
         perform home inspection services in Connecticut during the first
         year after such termination, the Home Inspector agrees to pay to
         Tiger Group the amount of Fifteen Thousand and No Dollars
         ($15,000) to reimburse Tiger Group for the cost of training the
         Home Inspector. Except under conditions of a lack of work layoff.

4.  **Insurance**. Tiger Group will provide to the Home Inspector, at Tiger
    Group's cost and expense, errors and omissions, liability, and workers'
    compensation insurance coverage under Tiger Group's master insurance
    plan. The Home Inspector shall be responsible to secure, at his option and
    at his sole cost and expense, accident, disability, life and health insurance.

5.  **Indemnity**. The Home Inspector shall indemnify, hold harmless and be
    liable to Tiger Group for one-half of all losses, damages, costs and
    expenses, incurred or suffered by Tiger Group in connection with any
    claims asserted in relation to any home inspection performed by the Home
    Inspector pursuant to this Agreement that are not covered under the
    insurance provided for in paragraph 4 of this Agreement.

6.  **Attorneys' Fees and Costs.** If any action of brought by Tiger Group to
    enforce any of the terms of this Agreement, the Home Inspector shall be

liable for all attorneys' fees and costs incurred by Tiger Group in connection with the enforcement of this Agreement.

7. **Miscellaneous Terms**. This Agreement may not be amended other than by a writing executed by all parties hereto. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which shall be deemed one and the same Agreement. This Agreement shall not be assigned to any third party without the express written consent of Tiger Group.

8. **Governing Law**. This Agreement shall be governed and construed in accordance with the laws of the State of Connecticut.

9. **Notice**. All notices provided for in this Agreement shall be in writing and shall be effective upon delivery of the respective parties by first class U.S. Mail.

**IN WITNESS WHEREOF**, the parties have hereunto set their hands and seals, the corporate party acting herein by its duly authorized officer, all as of the day and year first written above.

**HOME INSPECTOR**                    **TIGER GROUP, INC.**

Name:                                          Name:

# ADDENDUM

Schedule of Rate Increase by Accomplishment

1%    "S" or "O" wood-destroying insect licensed

1%    member of and participation in a recognized inspection association
      (preferably ASHI)

1%    radon testing certification

1%    energy tune-up qualified

1%    specialized training (own choice) – 20 hours
      (computer skilled?)

Home Inspector                          Tiger Group, Inc.

Name:                                   Name: